UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CR-24-129 RAW |
| ) | |
| THOMAS EDWARD GAILUS, ) | |
| ) | |
| Defendant. ) | |

## OPPOSED MOTION TO SUPPRESS AND BRIEF IN SUPPORT

Thomas Gailus moves to suppress statements made during a custodial interrogation that took place on March 23, 2023, in violation of *Miranda v. Arizona*[1] and the Fifth Amendment. Initially, the burden rests with the defendant to establish a prima facie case that he was under arrest or in custody. *United States v. Martinez,* 2024 WL 4821164, *9 (10th Cir. Nov. 19, 2024). The burden of demonstrating the admissibility of a statement alleged to have been made in violation of *Miranda* rests with the government. *See Brown v. Illinois,* 422 U.S. 590, 604 (1975) ("[T]he burden of showing admissibility [of a suspect's statement] rests, of course, on the prosecution.").[2]

---

[1] 384 U.S. 436 (1966)
[2] Mr. Gailus's statement was audio-recorded, and a copy of the interrogation will be made available for the Court's review in connection with this motion.

## FACTUAL BACKGROUND

After an investigation into an internet site that appeared to cater to persons sexually attracted to children, on March 20, 2023 federal agents secured a search warrant for Mr. Gailus's residence. The internet site went dark in November of 2022, after being operational for several years. The probable cause affidavit in support of the search warrant identified IP address 64.111.246.20 as having accessed a file from the site on July 9, 2022. This IP address led the agents to a subscriber at a residence later determined to be occupied by Thomas Gailus and three others[3] in Webbers Falls, Oklahoma. A subsequent "pen register and trap" investigation revealed that someone using the IP address had accessed the Tor network[4] every day (presumably connecting to the website) from August 22, 2022 until November 21, 2022, when the pen register order expired.

Early in the morning on March 23, 2023, while officers searched his residence, federal agents handcuffed Mr. Gailus. He was removed from the residence and taken to the agents' vehicle, where Mr. Gailus was questioned at 6:40 a.m. without the benefit of *Miranda* warnings. Agents removed the handcuffs from Mr. Gailus prior to placing him in the agents' vehicle. Nearly 47 minutes into the interview, Mr. Gailus

---

[3] Mr. Gailus identified the other residents as "Christian Aldan, Ariana Gailus (his daughter), and [his grandson]." Christian Aldan and Ariana Gailus own the home and are the biological parents of Mr. Gailus's grandson.

[4] Tor is an anacronym standing for "the onion router" and is sometimes referred to as the "Dark Web."

indicated a desire to stop the interrogation in response to questioning about what he talked about in internet chat rooms with "like-minded people." Mr. Gailus responded to the agent's question: "I can't say." "Not to mention the fact that I don't think I should say anything further because I believe criminal charges are going to be brought against me." The agents essentially ignored his statement, except to tell him that they did not have an arrest warrant and "we're not looking to arrest anyone today." (47:52)

The interview took about two hours, with Mr. Gailus making several incriminating statements such as being sexually attracted to pre-pubescent girls. He preferred "child modeling" internet sites and reading "stories" online. He admitted to downloading images but denied storing them on his computer. He spoke at length about how the internet chat rooms worked and suggested that he used the site that had been shut down in November. He denied sexually abusing children, however. Mr. Gailus was not arrested at the conclusion of the interrogation. Based upon data discovered during the search of the residence, the government filed an indictment on August 14, 2024 alleging that Mr. Gailus violated 18 U.S.C § 2252(a)(4)(B) & (b)(2) by accessing and possessing child pornography.

## **ARGUMENT AND AUTHORITY**

***Mr. Gailus's statements were the product of custodial interrogation without the benefit of a Miranda warning.***

One is only entitled to *Miranda* warnings prior to "custodial interrogations." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Thomas Gailus was in custody at the time of the questioning on March 23, 2023, and agents failed to inform him of his *Miranda* rights. "An interrogation is custodial when, 'in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *United States v. Wagner*, 951 F.3d 1232, 1250 (2020) (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)). If a reasonable person in the suspect's position "would reasonably believe [his or] her freedom of action had been curtailed to a 'degree associated with a formal arrest,'" the suspect is in custody for *Miranda* purposes. *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). Three factors bear upon whether a defendant is in custody: (1) whether the suspect is aware he does not have to answer questions or may end the interview whenever he wants; (2) whether the questioning is prolonged and accusatory in nature; and (3) whether the suspect is questioned in a police-dominated atmosphere. *Id.* at 1518–19.

Police domination of the encounter is indicated by: (1) separating the suspect from others who could lend moral support; (2) isolating the suspect in nonpublic

questioning rooms; (3) the threatening presence of multiple officers; (4) displaying of weapons by an officer; (5) physical contact with the suspect; and (6) use of language or vocal tones which suggest that compliance with an officer's request is compulsory. *See United States v. Jones,* 523 F.3d 1235, 1240 (10th Cir. 2008). The Tenth Circuit was deliberate in emphasizing, however, that courts must consider the circumstances surrounding the police-citizen encounter as a whole, rather than exclusively relying on some enumerated factors while ignoring others. *Id.*

The first of the three *Griffin* factors weighs in Defendant's favor. Here, neither of the agents who questioned Thomas Gailus advised him that he was free to leave. He certainly was not free to return to his home while the search was taking place. "[T]he lack of a police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention." *United States v. Guillen,* 995 F.3d 1095, 1109 (10th Cir. 1993).

As to the second factor, if the encounter "progresses beyond a short investigatory stop, a custodial environment is more likely." *United States v. Griffin,* 7 F.3d 1512, 1518 (10th Cir. 1993). This factor is concerned with whether "prolonged accusatory questioning ... create[d] a coercive environment from which an individual would not feel free to leave." *Id.* While the encounter between the agents and Defendant was not so prolonged in and of itself that it "create[d] a coercive environment from which an individual would not feel free to leave," it indeed

"progresse[d] beyond a short investigatory stop." *Id.* While the questioning started out innocuously enough, the interrogation progressed to the point where Mr. Gailus indicated a desire to stop answering questions when he was asked what he talked about in a computer chat room with "like-minded people."[5] Mr. Gailus recognized the accusatory nature of the questioning, but the agents continued their interrogation. This factor also weighs in favor of finding that Mr. Gailus was in custody.

The third *Griffin* factor indicates that "[w]here police are in full control of the questioning environment, custody is more easily found." *Id.* at 1518–19. This factor contemplates situations in which the suspect "feels completely at the mercy of the police." *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984). Mr. Gailus's daughter and her boyfriend were separated from Mr. Gailus during the search so they could each be interviewed separately. Taking into account the totality of the circumstances in this case, beginning with the service of the search warrant at dawn, the handcuffs, removing Mr. Gailus from his home and "escorting" him to the agents' vehicle, it is clear that law enforcement controlled all aspects of the interrogation.

In *United States v. Griffin,* 7 F.3d 1512 (10th Cir. 1993), the court determined that the defendant was in custody during questioning. The Tenth Circuit described the circumstances surrounding the defendant's detention:

---

[5] This was approximately 47 minutes into the recorded interrogation.

> Ms. Griffin was separated from her friend and asked to accompany an officer to a small private office within a police-controlled area of the airport. The second police officer knew defendant was a suspect in a drug crime. He took the suspect from an open conference area to a small police-restricted room, albeit voluntarily. Ms. Griffin was not told that she could refuse to answer the officer's questions or terminate the interview at any time and leave the smaller room. He placed the defendant in a situation where there was no exit except around the police.

*United States v. Griffin*, 7 F.3d 1512, 1519 (10th Cir. 1993)

Looking at the totality of the circumstances surrounding Mr. Gailus's interrogation, it is not reasonable for a person who has been taken from his home to a law enforcement vehicle in handcuffs to believe he was free to go. The fact that the handcuffs may have been removed prior to being placed in the agents' vehicle did not affect Mr. Gailus's custody status. *See United States v. Revels,* 510 F.3d 1269 (10th Cir. 2007). In *Revels*, as in Mr. Gailus's case, the officers arrived at the defendant's home early in the morning to serve a search warrant and placed the defendant in handcuffs. The officers in *Revels* separated the defendant from the other occupants of the home (her boyfriend and two children) and took her to a rear bedroom for questioning. Prior to questioning, the officers removed her handcuffs. "Taken together, these facts demonstrate that the police were unequivocally in control of the circumstances both before and during Revels' questioning." *Revels,* 510 F.3d at 1275. *See Griffin,* 7 F.3d at 1519 (noting that relevant circumstances for finding custody include "separation of the suspect from family or colleagues who could offer moral support …[and the]

7

threatening presence of several officers"); *United States v. DiGiacomo,* 579 F.2d 1211, 1214 (10th Cir. 1978) (holding that *Miranda* warnings were required when, among other things, the "defendant was kept apart from his companion," and "was confronted simultaneously by four federal agents"); *see also United States v. Mittel-Carey,* 493 F.3d 36, 39-40 (1st Cir. 2007) (finding custody for *Miranda* purposes in part because police officers conducted a search of the defendant's home at an early hour of the morning and exercised physical control of the defendant during that search).

## CONCLUSION

Mr. Gailus asks that the Court set this motion for a hearing and suppress the statements obtained during his custodial interrogation.

Respectfully submitted,

s/ *Stuart W. Southerland*
Stuart W. Southerland
Assistant Federal Public Defender
Okla. Bar Assn. No. 12492
Office of Federal Public Defender
Eastern District of Oklahoma
112 North 7th St.
Muskogee, Oklahoma 74401-6220
stuart_southerland@fd.org
(918) 687-2430
Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th of November 2024, I electronically filed this motion in the Eastern District of Oklahoma using the ECF System, which transmitted a Notice of Docket Activity to the following ECF registrants:

Dak Tupper Cohen
Clay A. Compton
Gwendelynn E. Bills

s/ *Stuart W. Southerland*